O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNG PHAM,<br><br>           Petitioner,<br><br>     v.<br><br>KRISTI NOEM et al.,<br><br>           Respondents. | Case No.: 5:25-cv-03373-MEMF-PD<br><br>**ORDER GRANTING IN PART PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 3]** |

   Before the Court is the Application for Temporary Restraining Order and Preliminary Injunction filed by Petitioner Dung Pham. Dkt. No. 3 ("Application"). For the reasons stated herein, the Motion is GRANTED IN PART.

   / / /

   / / /

   / / /

   / / /

1

## I. Background

### A. Factual Background[1]

Plaintiff Dung Pham was born in Vietnam and fled to the United States as a refugee in 1975, when she was five years old. Dkt. No. 1 ("Petition") at 4-5. She has lived in the United States ever since and has never left the country. *Id.*

Pham received lawful permanent resident status upon her arrival, but it was revoked after she was convicted of burglary and fraud. *Id.* Pham was detained and, on August 5, 1992, she was ordered removed from the United States. *Id.* While in custody, she signed the self-declaration form required to apply for a passport from Vietnam. *Id.* She never received the passport. *Id.* Pham was released after approximately 90 days and placed on supervision. *Id.* She complied with the conditions of that supervision without incident for 33 years. *Id.*

Consistent with that compliance, Pham arrived on time for her regularly scheduled October 13, 2025 check-in. *Id.* She was placed on electronic ankle monitoring without explanation. *Id.* Then, on October 31, 2025, Pham received a notification instructing her to return for an additional check-in. *Id.* She complied and was detained upon her arrival. *Id.* Immediately after, Respondents provided Pham with a Notice of Revocation of Release, which stated her supervised release was being revoked for her failure to assist ICE with obtaining travel documents and that there was no pending action with the court that would impede enforcement action. Opposition at 4.

On November 6, 2025, and November 13, 2025, Pham allegedly refused to cooperate with ICE's efforts to obtain a travel document. *Id.* at 4-5. On November 13, 2025, ICE completed and submitted a travel document request to Vietnam. *Id.* at 5.

Pham's prolonged illegal detention poses critical risks, both to her own health and to her mother's survival. Petition at 5. Pham recently recovered from colon cancer and remains under intensive medical supervision to ensure it does not return. *Id.*

---

[1] Unless otherwise indicated, the following factual background is derived from the Pham's Petition. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

Pham's mother, who is 82 years old, suffers from Parkinson's disease and is immobilized as a result. *Id.* She is also blind in one eye and deaf in one ear. *Id.* Pham is her primary caretaker. *Id.*

### B. Procedural History

On December 12, 2025, Pham filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. Pham also an Application for Temporary Restraining Order on December 12, 2025. Application. On December 16, 2025, the Court ordered the Respondents to file a response to the Application by December 16, 2025, at 5pm. Dkt. No. 9. The Court's Order also ordered Pham to file a Reply by December 17, 2025, at 5pm. *Id.* On December 16, 2025, Respondents filed an Opposition. Dkt. No. 9 ("Opposition"). On December 17, 2025, Pham files a Reply. Dkt. No. 10 ("Reply").

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this

section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

### III. Discussion

#### A. Pham's Application is procedurally proper.

As a threshold matter, Pham's Application is procedurally proper.

Local Rule 7-19.1 mandates that ex parte applications include the contact information for the opposing party, as well as a declaration of the movant's efforts to contact other counsel. L.R. 7-19.1.

Pham's Application lists the Respondents' counsel's telephone number, fax number, and email address. Application at 5-6. Attached to the Application, is a Pham's counsel's, Jonah Rosenbaum's, declaration, stating that Rosenbaum spoke with Respondents' counsel by phone on December 12, 2025, and subsequently emailed Pham's Petition and Request and Application to Respondents' counsel. *Id.* at 6. The Respondents' counsel stated the Respondents would oppose the Application. *Id.* For these reasons, this Court finds that Pham complied with Local Rule 7-19.1. Therefore, Pham's Application appears to be in compliance with the Local Rules.

Accordingly, the Court finds the Application is procedurally proper and will next turn to the merits of the Application.

#### B. Pham provides a sufficient legal basis for relief.

Respondents argue that Pham's Application is facially flawed as it is "devoid of legal analysis" and "relies on unverified allegations in the Petition." Opposition at 6.

Although the Application is brief, it does argue the factual and legal basis for the requested relief because it specifically references the claims set forth in Pham's Petition, and the Petition, which is accompanies by supporting exhibits, argues why Pham is likely to succeed on the merits for Pham's claims. *See* Application at 1; *see generally* Petition. Pham subsequently included additional

exhibits and discussion in the Reply. *See generally* Reply. Therefore, the Court holds that Pham provides a sufficient legal basis for relief.

### C. Applying the *Winter* factors, Pham is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Pham is entitled to a temporary restraining order. Having determined below that Pham is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

Pham advances two grounds upon which a temporary restraining order should be granted. First, Pham argues that ICE unequivocally failed to provide notice or an opportunity to be heard prior to Pham's re-detention. Petition at 5; Reply at 4-7. Second, Pham asserts that there have been insufficient efforts to effectuate Pham's removal to Vietnam, and there is an unlikelihood that removal to Vietnam will occur in the reasonably foreseeable future. *Id.* As such, Pham alleges that Respondents violated 8 U.S.C. § 241.13(i)(2)-(3). *Id.* at 7.

The Court addresses these grounds below.

      i. <u>The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.</u>

          1. *There is no significant likelihood of Pham's removal to Vietnam in the reasonably foreseeable future.*

On his first ground, Pham argues that Respondents have failed to establish that her removal to Vietnam is likely to occur in the reasonably foreseeable future. Reply at 2-4; Petition at 12-13. Respondents counter, stating that they have applied for travel documents and that Vietnam has been receptive to accepting removed noncitizens. Opposition at 2, 8-9.

In *Zadvydas*, the Supreme Court established that a six-month period of detention was presumptively reasonable. 533 U.S. at 701. Thus, in order to demonstrate a likelihood of success on the merits, Pham has to indicate that there is good reason to believe that there is no likelihood of

removal in the near future. *Id.* However, because Pham is an immigrant released under an order of supervision, Section 241.13 governs codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

8 U.S.C. § 241.13(a) (emphasis added).[2] This therefore indicates that the subsection Pham relies upon—241.13(i)(2)-(3)—only applies where the noncitizen has made the showing of "good reason to believe there is no significant likelihood of removal." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Pham has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Under Section 241.13(i)(2), Respondents bear the burden to establish that there is a significant likelihood that Pham may be removed in the reasonably foreseeable future. As stated by Respondents, the only action taken toward Pham's removal is the November 13, 2025 travel document request to Vietnam. Opposition at 5. Respondents also state that three individuals were removed to Vietnam in the past year to indicate a significant likelihood of Pham's removal. *Id.* at 12.

The 2020 Memorandum of Understanding between the U.S. and Vietnam provides that within thirty days of a request for travel documents, the travel document should be issued, or the individual should be notified that it is insufficient. *See* 2020 Memorandum of Understanding between the Department of Homeland Security of the United States of America and the Ministry of

---

[2] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

Public Security of the Socialist Republic of Vietnam §§ 8(3), (4) (November 21, 2020), https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf ("2020 Memorandum").[3] The form attached to the 2020 Memorandum requests information as to the potentially removed individual's relatives, whom the individual will live with upon returning to Vietnam, and a proposed address. *Id.* at 7-8.

As it stands, Pham has gone over a month without a travel document, after the request was made, and Respondents have not indicated a travel document is forthcoming in the near future. Further, Pham has raised genuine concerns as to whether Vietnam will accept her. Pham has no connections to Vietnam, has not established a Vietnam address in the event of her removal, and she is a refugee who fled Vietnam because her father had assisted the United States Miliary in the Vietnam War. Petition at 9-10. Taken together, Pham's circumstances raise doubts that Vietnam will accept her due to her familial background and compliance with the 2020 Memorandum form.

Furthermore, Respondents' reliance on three instances of an individual being removed to Vietnam is not persuasive to show that Pham herself faces a "significant likelihood of removal in the reasonably foreseeable future." *See* Opposition at 12. In sum, there is no "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701.

This Court thus finds that Pham has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas* on this ground.

### 2. *Pham was re-detained without notice and was not provided an opportunity to be heard.*

On this ground, Pham argues that Respondents failed to provide adequate notice or an opportunity to be heard prior to Pham's re-detention. Petition at 12; Reply at 5-7. Respondents that they properly gave notice to Pham on October 31, 2025, which detailed the changed circumstances

---

[3] Even if the Government can establish that Pham is removable under the 2020 Memorandum, Vietnam has total discretion whether to accept particular non-citizens so the 2020 Memorandum is insufficient on its own to show a significant likelihood of removal. *See Nguyen v. Hyde,* 788 F. Supp. 3d 144, 151 (D. Mass. 2025); *Hoac v. Becerra*, No. 25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Vu v. Noem*, No. 25-CV-01366, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025).

1 warranting removal. Opposition at 13-15. Respondents do concede that Pham was not afforded an
2 opportunity to be heard. *Id.*

3 "'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of
4 removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507
5 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice
6 and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central
7 Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

8 Respondents argue that although Pham was not provided an opportunity to be heard, this
9 constituted a mere procedural deficiency and their ability to revoke Pham's supervised release is
10 discretionary. Opposition at 14-15 (citing *Rodriguez v. Hayes*, 578 F.3d 1032, 1044 (9th Cir. 2009)).
11 This does not mean that Pham does not have a right to notice or an opportunity to be heard. And
12 Respondents fail to justify how they are authorized to exercise discretion under the regulation in a
13 way that directly contravenes the requirement of the same regulation to provide notice and an
14 opportunity to be heard. In light of *J.G.G.*, it appears that the applicable regulations, namely 8
15 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will
16 meet the due process rights of putative detainees. The Respondents provide no reason that this Court
17 should find otherwise, and this Court declines to take the extraordinary position that these
18 individuals are not entitled to notice and an opportunity to be heard in the absence of clear
19 direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect.
20 *See generally* Opposition. And in their Notice of Revocation of Release, Respondents cite to Section
21 241.13 and explicitly inform Pham that would "promptly be afforded an informal interview" to give
22 Pham "the opportunity to respond to the reasons for the revocation." Dkt. No. 9-2 at 3. Thus, the
23 Court holds that Respondents' admitted failure to provide Pham an opportunity to be heard is not a
24 harmless procedural deficiency but constitutes an unequivocal violation of Section 241.13(i)(3).

25 As to notice, Respondents presented Pham with the notice of revocation of release on
26 October 31, 2025—the day Pham was re-detained. In the notice, Respondents claim that removal
27 was based on the following changed circumstances: (1) Pham's failure to "assist ICE with obtaining
28

1  a travel document;" and (2) Pham does not have "pending action with the court that would impede
2  enforcement action." Dkt. No. 9-2 at 3.

3  First, Respondents' evidence appears to establish that Pham was not even asked to cooperate
4  with ICE's efforts to obtain a travel document until November 6—nearly one week *after* the October
5  31 Notice purporting to revoke her release based upon failure to assist. Dkt. No. 9-1 ¶¶14-15 (laying
6  out the chronology of Pham's case, and making no reference to any refusals to cooperate prior to
7  November 6). As Pham puts it, "Pham could not have failed to assist ICE with her removal before
8  she was asked to do so." Reply at 5; Petition at 7. The record demonstrates that prior to Pham's re-
9  detention, on October 31, 2025, Pham was not asked to assist in acquiring travel documents or
10 related measures to effectuate her removal. In fact, it appears that Respondents did not ask Pham to
11 "sign any papers regarding [her] deportation to Vietnam until November 5, 2025" at the earliest.[4]
12 Dkt. No. 10-2 ¶ 4. The Court does not credit the Respondents' argument that Pham was properly
13 given notice and an opportunity to be heard when the evidence shows she was detained for failing to
14 assist with travel documents *before* she was asked to do so. Reply at 7. Therefore, the Court finds
15 that Respondents' notice is insufficient on this basis under Section 241.13(i)(2)-(3).

16 Second, the lack of a pending action with the court is not a *changed* circumstance which
17 would justify her redetention. There has been no such pending action since Pham was placed on
18 supervised release on October 15, 2016, and by definition there has been no such pending action that
19 has recently ceased. *See* Reply at 7. Opposition at 13-15 (failing to identify what pending action has
20 recently ceased). Thus, the Court determines that Respondents' notice is insufficient on this
21 additional basis pursuant to Section 241.13(i)(2)-(3).

22 Accordingly, the Court concludes that Pham was not properly given notice and an
23 opportunity to be heard under Section 241.13(i)(2)-(3).

24 This Court's conclusion is consistent with that of other district courts. *See* Reply at 2–3
25 (collecting cases). Particularly instructive is the district court's approach in *McSweeney v. Warden of*

---

[4] Pham points out that she now understands what was being requested in November and is willing to sign. The Court finds this reference to her failure to cooperate to be a red herring as it appears that within days after Pham purportedly failed to assist for the second time, Respondents were able to complete and submit the travel document request. Dkt. No. 9-1 ¶ 17.

*the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. In *McSweeney*, it appears that the petitioner had received *adequate* notice, unlike Pham; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies constituted violations of procedural due process. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Today, the Court must determine whether Pham is likely to eventually prevail on the merits. For the reasons described above, this Court finds that she is likely to succeed on the merits under both of her arguments for habeas relief. In sum, the first *Winter* factor is met here under both of Pham's arguments for habeas relief.

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Pham must demonstrate a likelihood that she will suffer irreparable harm without a temporary restraining order. This Court finds that she has done so.

As a threshold matter, Pham has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents have provided no evidence that Pham's detention will not be prolonged or that Min's removal is likely to occur in the reasonably foreseeable future. *See generally* Opposition. Further, Respondents have failed to comply with the legal process that is due to her as a detained noncitizen. *J. G. G.*, 604 U.S. at 673. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Pham's ongoing detention of indeterminate length—which may lead to a deportation sometime in the future to an undetermined country—inherently risks her irreparable

1 harm, as it is not clear when she will be processed, released, or removed. Pham's harm is
2 compounded by her separation from her mother, who she is the primary caretaker for. Petition at 5.
3 And Pham has significant medical needs, requiring urgent attention. Reply at 9; Dkt. No. 10-1 ¶ 5;
4 *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001).

Thus, as this Court has already found that Pham has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Pham constitutional rights—this Court finds the second *Winter* factor is met.

        iii. <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Pham's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Pham's favor. The Court agrees that the Government has a strong interest in the enforcement of federal immigration law. Opposition at 16. However, the Respondents have failed to comply with binding authorities, resulting in the violation of Pham's constitutional rights against unlawful detainment. *Id.* at 12. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Given Pham's unlawful detention, and without any reason to believe Pham's removal or release will occur in the reasonably foreseeable future, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Accordingly, the third and fourth *Winter* factors are met here.

## IV. Conclusion

For the foregoing reasons, the Application is GRANTED IN PART. Petitioner's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable, and not re-detain her without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;
2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;
3. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.
   a. Respondents' brief is due at 5 PM on Friday, December 26. Petitioner may file a response brief by Monday, December 29.
   b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Wednesday, December 24. Should the parties wish to extend either briefing deadline past Monday, January 5, 2026, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.
   c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.
4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by January 2, 2026.

13

5. The Court waives the bond requirement pursuant to Federal Rule of Civil Procedure 65(c) as to Petitioner.

   IT IS SO ORDERED.

Dated: December 22, 2025

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge